**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| SCOTT WASHINGTON, | |
| Plaintiff, | |
| | Civil Action No.: |
| v. | |
| GOVERNMENT            EMPLOYEES INSURANCE COMPANY, | 5:22-cv-00457 |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff Scott Washington and brings this action and brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter, "Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter "Section 1981"), and the Age Discrimination in Employment Act, 29 U.S.C. § 623 (hereinafter, "ADEA"). Plaintiff alleges that Defendant Government Employees Insurance Company subjected Plaintiff to discrimination based on his race and age, and for further subjecting Plaintiff to retaliation after he participated in protected activities, and respectfully shows the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.

2.

Venue is proper in this judicial district because the events underlying this action, occurred in Macon-Bibb County, Georgia, which is located in this judicial district, pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3.

Plaintiff Scott Washington (hereinafter, "Plaintiff" or "Washington") is a citizen of the United States and a resident of the State of Georgia. At all times relevant to this suit, Mr. Washington was employed by Defendant. Mr. Washington is a covered, non-exempt employee under all laws referenced herein.

4.

Defendant Government Employees Insurance Company (hereinafter, "Defendant" or "GEICO") is a foreign insurance company, incorporated under the laws of the State of Maryland and authorized to conduct business in the State of Georgia. Defendant's principal office is located at 5260 Western Avenue, Chevy Chase, Maryland 20815, and Defendant may be served with process through its Registered Agent, CT Corporation System, located at 289 South Culver Street, Lawrenceville, Gwinnett County, Georgia 30046.

5.

Defendant is a major national insurance carrier and is one of the largest automobile insurance companies in the country. Defendant is engaged in interstate commerce, has annual revenue in excess of $500,000.00, and has employed far in excess of 501 employees working for at least 20 calendar weeks in 2021 and in prior calendar years. As a result, Defendant is a covered

employer within the meaning of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act.

## STATEMENT OF FACTS

6.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 5, as if the same were set forth herein.

7.

Mr. Washington is a black male, and he was over the age of forty at all times relevant to the instant action and was 48 years of age at the time of his termination.

8.

Mr. Washington first began his employment with Defendant on November 26, 1996.

9.

For the last eight years of his employment, Mr. Washington served as a Licensed Property and Casualty Agent, more commonly referred to as a "Sales Agent," but Mr. Washington had previously worked as both a Claims Adjuster and a Manager.

10.

Toward the end of his tenure working for Defendant, Mr. Washington was one of the oldest Sales Agents in the department.

11.

Mr. Washington is licensed to sell insurance in 36 states.

12.

As a Sales Agent, it was Mr. Washington's responsibility to take telephone calls with existing and potential customers, and attempt to sell insurance products to such callers.

13.

Critically, Mr. Washington worked in a division that focused on callers that came from the Midwest region of the United States, and Defendant had a separate division for a time that served the Southeastern United States.

14.

Up until the time that Defendant merged the two departments in December 2020, the respective regional sales departments had approximately 150 employees each.

15.

Until the global pandemic forced employees to telework, Mr. Washington worked in one of Defendant's buildings on its Macon, Georgia campus, located at 429 Ocmulgee East Industrial Boulevard, Macon, Bibb County, Georgia 31201.

16.

Mr. Washington's performance was exemplary during his entire, and he received numerous awards and recognitions, the number of insurance policies that he sold each year was generally well above average, and he always maintained nearly perfect annual ratings.

17.

However, in or around June 2019, Defendant began an investigation into Mr. Washington as an allegation had been made that he was not following policies concerning underwriting.

18.

While Defendant initially told Mr. Washington that he had been randomly selected for the investigation, he later learned from his coworkers that Michael Lowers, the supervisor over the Southeast Region, (hereinafter, "S.E. Supervisor Lowers") had initiated the investigation.

19.

Indeed, it was S.E. Supervisor Lowers' responsibility to oversee quality assurance for Sales Agents, but only the Sales Agents who worked within the Southeast Department.

20.

S.E. Supervisor Lowers had no supervisory authority over Mr. Washington and other Sales Agents for the Midwest.

21.

Previously, Mr. Washington and S.E. Supervisor Lowers had previously worked in the same department, but Mr. Washington did not have any reason to believe that Lowers had any problems with him.

22.

However, it was around this time that one of Mr. Washington's coworkers told Mr. Washington that S.E. Supervisor Lowers did not like him.

23.

After Defendant concluded the June 2019 investigation, it found that the allegations into Mr. Washington's purported wrongdoing did not have any merit.

24.

After the conclusion of Defendant's investigation, Mr. Washington became aware of the actual reason for Defendant's investigation.  Several of Mr. Washington's coworkers later told him that, after the investigation, S.E. Supervisor Lowers was continuing to monitor Mr. Washington's telephone calls with customers.

25.

It became apparent that S.E. Supervisor Lowers' conduct was racially-motiviated as S.E. Supervisor Lowers apparently told Mr. Washington's coworkers that he was trying to get Mr. Washington's "black ass fired."

26.

In November 2019, Mr. Washington filed an internal grievance concerning S.E. Supervisor Lowers' conduct, and the Human Resources Department launched an investigation soon thereafter.

27.

After its investigation, the HR Department found that S.E. Supervisor Lowers was still monitoring Mr. Washington's activities, and that Lowers had admitted to doing so.

28.

According to S.E. Supervisor Lowers, he had been getting complaints about some of Mr. Washington's calls, but this could not have been true because any customers complaining about Mr. Washington's calls would not have been sent to the Southeast Region, and since S.E. Supervisor Lowers was not Mr. Washington's supervisor, there would not have been any reason why he would have received complaints about his work.

29.

After the investigation, the HR Department did not issue a formal reprimand to S.E. Supervisor Lowers.

30.

The HR Department did, however, advise S.E. Supervisor Lowers to stop monitoring Mr. Washington and other employees in the Midwest Region.

31.

While Mr. Washington had said in his internal grievance that he thought Lowers' actions had been motivated by Mr. Washington's race and age, Defendant apparently failed to investigate or take any other actions concerning the alleged discrimination.

32.

Generally, being a Sales Agent with Defendant is often fast-paced and frequently requires the Sales Agents to utilize new and emerging technologies and communications.

33.

During Mr. Washington's tenure, there was a substantial gap in the ages of the Sales Agents, with vast majority being in their twenties, and the remainder of the Sales Agents were generally around Mr. Washington's age and were generally twenty-plus years older than the average Sales Agent.

34.

Mr. Washington also observed Defendant routinely take actions that suggested that Defendant did not believe that its older Sales Agents were able to keep up.

35.

For example, Mr. Washington observed Defendant moving older employees out of the Sales Agent role and either into other positions or terminating their employment all together as a result.

36.

In March 2020, the Midwest Sales Director, Chelsey Ibarra, (hereinafter, "MW Sales Director Ibarra") advised Mr. Washington that she had received several reports of errors in Mr. Washington's underwriting.

37.

Mr. Washington complied with MW Sales Director Ibarra's request to respond to the allegations, which he did by email on March 10, 2020.

38.

However, around the time of this March 2020 inquiry, one member of upper management, Aveno Nelson, told Mr. Washington that S.E. Supervisor Lowers was, once again, the individual behind the report and these new allegations.

39.

Even though Mr. Nelson had said he had observed similar conduct from S.E. Supervisor Lowers' previously, Mr. Nelson said that he only felt comfortable sharing the information in March 2020 time because he was in the process of retiring.

40.

Apparently, S.E. Supervisor Lowers was still monitoring Mr. Washington's telephone calls with customers, and he had also been approaching Mr. Washington's supervisors to encourage them to do the same. S.E. Supervisor Lowers even called one of Mr. Washington's directors and tried to get Mr. Washington fired.

41.

In his March 10, 2020 email to MW Sales Director Ibarra, Mr. Washington explained that he felt like he was being singled out, he was being subjected to harassment and hostile work environment, and that S.E. Supervisor Lowers was putting Mr. Washington's job in jeopardy. While Mr. Washington did not say in this email that he thought that S.E. Supervisor Lowers' conduct had been based on Washington's race and age, he did explain that he felt like Lowers was

retaliating against him because he had filed the aforementioned informal grievance in November 2019.

42.

As a result of the March 2020 inquiry, Defendant ultimately issued a warning to Mr. Washington that he would be subjected to discipline if there were any additional errors in his underwriting.

43.

From around the time that Mr. Washington sent this email to MW Sales Director Ibarra in March 2020, until around December 2020, nothing notable occurred between Mr. Washington and S.E. Supervisor Lowers.

44.

However, Mr. Washington became aware that S.E. Supervisor Lowers had targeted another Sales Agent, Dendrick King, who is also a black male, ultimately causing Mr. King to be terminated in September or October 2020, due to purported errors that Mr. King had made in the underwriting process or technology issues that may have led to the same result.

45.

Apparently, S.E. Supervisor Lowers had been known to have targeted and monitored, at least, five to six other African American Sales Agents in similar manners as Washington and King over the previous two years.

46.

On the other hand, white Sales Agents were not subjected to similar treatment by S.E. Supervisor Lowers.   For example, S.E. Supervisor Lowers continued to maintain friendly relationships with white, male Sales Agent like Chad Hickman and Christopher McCrover.  Not

only did he not target these employees, searching hard to find their mistakes, S.E. Supervisor Lowers would routinely give these other employees a heads-up when he noticed a deficiency, mistake, or something else that they needed to fix before it could be submitted up the chain of command, such as with discrepancies in underwriting.

47.

Previously, in Spring 2020, Defendant sent its employees home to telework as a result of the COVID-19 pandemic.

48.

Once Mr. Washington started his remote work, he was largely able to perform his job, even though Defendant did not issue him a company laptop computer until October 2020.

49.

Moreover, as a result of this new remote work, Defendant was having company-wide problems with its technology services.  One of the biggest problems that Defendant had were regarding technical issues with its payment systems.  Around this time, Defendant was sending emails on a near-daily basis, advising its employees what to do if they encountered such problems. One of Defendant's directives was that, in the event that a Sales Agent encountered a technical issue with the payment system, the Sales Agent should still sell the policy to the customer, and that payment for the new policy would be accepted at a later date.

50.

In December 2020, Defendant merged its Midwest and Southeast Departments, and while this did not place S.E. Supervisor Lowers within Mr. Washington's direct chain of command, it did mean that S.E. Supervisor Lowers would now have the ability to access Mr. Washington's records.

51.

On January 12, 2021, two managers and one of Mr. Washington's direct supervisors asked to meet with Mr. Washington about policies that he had sold since September 2020, of which Defendant had not received a payment from a handful of its customers.

52.

Not only had S.E. Supervisor Lowers just regained access to records for Mr. Washington in the prior month, S.E. Supervisor Lowers was known to have an extremely close professional and personal relationship with one of the managers who was involved in this conversation.

53.

After the meeting, Mr. Washington sent an email explaining that the supposed deficiencies that had been raised the two managers and supervisor had resulted from the same technical issues in Defendant's payment systems, as described above.

54.

Defendant had also taken issue with the fact that the time-stamp on some of Mr. Washington's sales had occurred after Mr. Washington ended a call with a customer. Mr. Washington explained that this may have resulted in a call that was dropped after the customer made a commitment to purchase a policy, or that Mr. Washington had simply noted the customer's commitment after the call ended.

55.

Mr. Washington also explained that he had been forced to use his own mobile phone for these calls since he had been working from home, which was causing additional difficulties beyond Defendant's company-wide technical issues.  Mr. Washington explained in his email that he had

purchased a Bluetooth-enabled headset, which would free up his hands in order to allow him to notate commitments while still on a customer call.

56.

Since there had been some suggestion that Mr. Washington's failure to get payment for his sales was intentional, Mr. Washington reminded the managers and supervisor that a large part of his compensation was on revenue-based commissions, so it would not have been in his interest to avoid collecting payment for sales that he made since he would not receive credit and the associated compensation.

57.

In the same email, Mr. Washington, once again, explained that he had been harassed for two years by management of the Southeast Department, and that it appeared that he was again being singled-out in retaliation for submitting an internal complaint.

58.

As Mr. Washington noted in the same email, the timeline of his internal complaints and Defendant's multiple investigations, including the close proximity thereto, would suggest that the investigations were in retaliation for each of his internal complaints concerning S.E. Supervisor Lowers.

59.

Critically, Mr. Washington had observed that Defendant previously made its employment decisions largely for objective, performance-related reasons, such as not meeting specific performance or sales metrics, or for malfeasance, like intentional falsification or lack of integrity. Mr. Washington not previously seen Defendant terminate employees for a mistake or oversight, and employees were generally provided with some amount of due process in the way of formal

counseling and written warnings before they would be subject to termination.  Since Mr. Washington had not been provided such formal counseling or similar written warnings, as he had seen before, Mr. Washington felt like his circumstances were unique and that Defendant was singling him out for the reasons described herein.

60.

On February 4, 2021, management met with Mr. Washington via Zoom concerning the same subject matter of the January 12, 2021 conversation.  However, management did not follow Defendant's policies during this meeting because no warning was issued, and management did not issue any documentation of this meeting in writing.

61.

On February 4, 2021, Mr. Washington – a nearly 25-year employee of Defendant – was told simply that management looked into the situation, and he was being terminated.

62.

Several days later, Mr. Washington received a Georgia Department of Labor Separation Notice.  In the Separation Notice, Defendant merely said that it was terminating Mr. Washington for "violation of company policies/practices."

63.

 In the days following his separation, several of Mr. Washington's former coworkers contacted him independently and told Mr. Washington that they thought he had been targeted by S.E. Supervisor Lowers because of his race or age.

64.

Defendant failed to take any action against S.E. Supervisor Lowers, and Defendant otherwise failed to address Mr. Washington's complaints of discrimination based on race or age or retaliation.

Procedural/Administrative Background

65.

On August 3, 2021, Mr. Washington filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that he had been subjected to continuing discrimination based on race as well as retaliation. The EEOC assigned Mr. Washington Charge Number 410-2021-06285.

66.

Defendant had actual notice of the EEOC Charge, participated in the administrative proceedings, and was represented by counsel at the time.

67.

On or about September 28, 2021, the EEOC issued a Determination and Notice of Rights, which Mr. Washington received, through counsel, at some point thereafter.

68.

Mr. Washington has exhausted his administrative remedies as to the claims in his Charge of Discrimination, and he is filing the instant action within ninety days of the EEOC's issuance and his receipt of the Notice of Right to Sue.

## COUNT I:
## DISCRIMINATION BASED ON RACE
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

69.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 68, as if the same were set forth herein.

70.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against any individual with respect to his or his compensation, terms, conditions, or privileges of employment because of such person's race.  42 U.S.C. § 2000e-2(a).

71.

Plaintiff is considered in a protected class as his race is black or African American.

72.

As alleged herein, Plaintiff was qualified his position that he held with Defendant and his performance was exemplary at all times.

73.

As alleged herein, beginning in or around June 2019, and continuing through January 2021, one of Defendant's supervisors, who did not have any direct authority over Plaintiff, made numerous attempts to have Plaintiff fired.  The same individual told several others that he was wanted to have Plaintiff's "black ass fired," suggesting that his actions were motivated by Plaintiff's race.

74.

It was the same supervisor who specifically caused Defendant to open each of the investigations into Plaintiff's conduct and/or performance, even though the individual was not

Plaintiff's supervisor, and otherwise had no legitimate reason to be looking into Plaintiff's work activities.

75.

The reasons that Defendant provided for each of its investigations into Plaintiff were not legitimate and were easily explainable as being untrue, simple mistakes, or problems that had arisen from Defendant's company-wide technical issues.

76.

During the same period of time, the same supervisor contacted several individuals who were actually in Plaintiff's chain of supervisor, and encouraged said supervisors to terminate Plaintiff's employment, even though his recommendations had neither been solicited or contemplated by Defendant's policies.

77.

This supervisor was ultimate successful in his attempts to have Plaintiff's "black ass fired," as Defendant terminated Plaintiff's employment on February 4, 2021.

78.

Defendant will be unable to present any evidence of a legitimate, nondiscriminatory reason for the acts and omissions raised herein and for otherwise treating Plaintiff less favorably than his similarly situated counterparts who are not black or African American.

79.

Plaintiff will prove that Defendant's stated reasons were pretextual and that Defendant's actions were indeed motivated by Plaintiff's race.

80.

Plaintiff has been injured by Defendant's discrimination based on race against him, and he is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay including fringe benefits, front pay, injunctive relief, compensatory and punitive damages, in the amount of not less than $300,000.00, or amount otherwise permitted by statute, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT II:**
**RACIAL DISCRIMINATION**
**IN VIOLATION OF SECTION 1981**

81.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 68, as if the same were set forth herein.

82.

As a black or African American man, Plaintiff has the same right to make and enforce contracts as his white counterparts, which cannot otherwise be impaired by nongovernmental discrimination or impairment under color of State law. 42 U.S.C. § 1981.

83.

Courts have long recognized that employment relationships, even those that are at-will, are considered contracts for the purposes of Section 1981.

84.

For the reasons set forth in Count I, *supra*, which are incorporated herein, Defendant is liable to Plaintiff for infringing upon his right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.  As a result, said Defendant are liable

under Section 1981, and Plaintiff is entitled to all damages available to his in an amount to be proven at trial.

85.

As alleged in Count I, Defendant intentionally discriminated against Plaintiff on the basis of race and by infringing upon Plaintiff's right to make and enforce contracts and to have the full and equal benefit of all laws as is enjoyed by white citizens.  As a result, Defendant is liable under Section 1981, and Plaintiff is entitled to all damages available to his in an amount to be proven at trial.

### COUNT III:
### AGE DISCRIMINATION
### IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

86.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 68, as if the same were set forth herein.

87.

Pursuant to the Age Discrimination in Employment Act, it is unlawful for an employer to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of his or her employment because of such individual's age. 29 U.S.C. § 623.

88.

At all times underlying this action, Plaintiff was between the ages of forty and seventy.

89.

As alleged herein, Plaintiff was qualified his position that he held with Defendant and his performance was exemplary at all times.

90.

Defendant was known to express an unfounded belief that its older employees were not able to keep up in the position of Sales Agent.  As a result, Defendant would routinely cause such older employees to be moved to different department or have their employment terminated all together.

91.

In the alternative to the allegations set forth in Counts I and II, *supra*, Defendant routinely subjected Plaintiff to investigations and ultimately terminated his employment on February 4, 2021.

92.

After Defendant terminated Plaintiff's employment, he was replaced with an employee who was substantially younger that Plaintiff.

93.

Moreover, Defendant's Sales Agents who were younger than Plaintiff and otherwise under the age of forty were not subjected to similar, unfounded investigation as was Plaintiff.

94.

As a result, Plaintiff was treated less favorably than his coworkers who were younger than him and under the age of forty.

95.

Defendant will be unable to present any evidence of a legitimate nondiscriminatory motive for subjecting Plaintiff to investigations based on malicious reports of poor performance or misconduct and for terminating his employment  and otherwise treating Plaintiff less favorably than his counterparts who were younger than Plaintiff.

96.

Plaintiff will prove that the Defendant's stated reasons are pretextual, were willful and indeed motivated by Plaintiff's age.

97.

Plaintiff has been injured by Defendant's discrimination based on age, and he is entitled to all damages allowed under the Age Discrimination in Employment Act, including back pay including fringe benefits, front pay or reinstatement, injunctive relief, liquidated damages, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT IV:
## RETALIATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

98.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 68, as if the same were set forth herein.

99.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to retaliate against an employee because he has opposed any unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a).

100.

As alleged herein, in November 2019, March 2020, and January 2021, Plaintiff submitted internal complaints that he was being targeted by a supervisor outside of his chain of command on account of his race.

101.

After each of Plaintiff's complaints concerning said supervisor's racially discriminatory actions, the same supervisor caused Plaintiff to be subjected to further investigation, warnings concerning his conduct and performance, and ultimately his termination on February 4, 2021.

102.

Moreover, Defendant completely and entirely failed to investigate or take any other actions concerning Plaintiff's complaints that he was being subjected to ongoing racial discrimination.

103.

Plaintiff has been injured by Defendant's retaliatory conduct in response to Plaintiff's participation in protected activities, and Plaintiff is entitled to all damages allowed under the Title VII of the Civil Rights Act, including back pay including fringe benefits, front pay, injunctive relief, compensatory and punitive damages, in the amount of not less than $300,000.00, or amount otherwise permitted by statute, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT V:**
**RETALIATION IN VIOLATION OF**
**THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

104.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 68, as if the same were set forth herein.

105.

Under the Age Discrimination in Employment Act, it is unlawful for an employer to discriminate against any employee because such person has "opposed any practice made unlawful

by this section, or because such individual … has made a charge, testified, or participated in any matter in an investigation, proceeding, or litigation under this chapter.".  29 U.S.C. § 623(d).

106.

As alleged herein, Plaintiff is a covered employee under the Age Discrimination in Employment Act, and Defendants are considered covered employers under the same. *See* 29 U.S.C. § 630.

107.

As alleged herein, in November 2019, March 2020, and January 2021, Plaintiff submitted internal complaints that he was being targeted by a supervisor outside of his chain of command on account of his age.

108.

After each of Plaintiff's complaints concerning said supervisor's discriminatory actions based on age, the same supervisor caused Plaintiff to be subjected to further investigation, warnings concerning his conduct and performance, and ultimately his termination on February 4, 2021.

109.

Moreover, Defendant completely and entirely failed to investigate or take any other actions concerning Plaintiff's complaints that he was being subjected to ongoing discrimination based on age.

110.

Plaintiff has been injured by Defendants' retaliation, and he is entitled to all damages allowed under the Age Discrimination in Employment Act, including back pay including fringe

benefits, front pay or reinstatement, injunctive relief, liquidated damages, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE. Plaintiff Scott Washington respectfully prays for the following relief:

(a)    The Summons and Process be issued to Defendant Government Employees Insurance Company, and that said Defendant be served as provided by law;

(b)    That this matter be tried before a jury;

(c)    That judgment be awarded for and in favor in Plaintiff and against Defendant Government Employees Insurance Company on Count I for discrimination based on race, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act of 1964;

(d)    That judgment be awarded for and in favor in Plaintiff and against Defendant Government Employees Insurance Company on Count II for discrimination based on race, and grant Plaintiff all relief allowable under Section 1981;

(e)    That judgment be awarded for and in favor in Plaintiff and against Defendant Government Employees Insurance Company on Count III for discrimination based on age, and grant Plaintiff all relief allowable under Age Discrimination in Employment Act;

(f)    That judgment be awarded for and in favor in Plaintiff and against Defendant Government Employees Insurance Company on Count IV for retaliation, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act of 1964;

(g)    That judgment be awarded for and in favor in Plaintiff and against Defendant

Government Employees Insurance Company on Count V for retaliation, and grant Plaintiff all

relief allowable under Age Discrimination in Employment Act; and,

(h)    For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 27th day of December, 2022.

KENNETH E. BARTON III
Georgia Bar No. 301171
*Attorney for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
Telephone: (478) 841-9007
Facsimile: (478) 841-9002
keb@cooperbarton.com